**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DONGXU CHEN,<br>Petitioner,<br>v.<br>JAMES JANECHA, et al.,<br>Respondents. | Case No. 5:26-cv-05165-SP<br><br>**MEMORANDUM OPINION AND ORDER GRANTING PETITION** |

## I.
## INTRODUCTION

On September 7, 2026, petitioner Dongxu Chen, a federal immigration detainee, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition" or "Pet."). Docket no. 1. The Petition is supported by a declaration by petitioner ("P. Decl.") and exhibits. Petitioner is being held at U.S. Immigration and Customs Enforcement's ("ICE") Desert View Facility in Adelanto, California. Petitioner contends his detention violates his rights to procedural and substantive due process under the Fifth Amendment and the Immigration and Nationality Act ("INA"). Petitioner seeks immediate release from immigration custody, as well as declaratory and other injunctive relief.

On September 15, 2026, respondents filed a response to the Petition ("Answer"), arguing that petitioner is only entitled to a bond hearing. Docket no. 8. Petitioner filed a Reply on September 17, 2026, contending that release is the appropriate remedy. Docket no. 9. On November 19, 2026, petitioner filed an ex parte application for immediate relief. Docket no. 11.

For the reasons discussed below, petitioner's procedural due process claim merits habeas relief. The court therefore grants the Petition and issues a writ of habeas corpus requiring petitioner's immediate release from immigration custody along with other relief.

## II.

## BACKGROUND

Petitioner is a 48-year-old native and citizen of the People's Republic of China. Pet. ¶ 1; P. Decl. ¶ 2, Ex. 2. Petitioner entered the United States on October 15, 2024 on a B-2 nonimmigrant visa. *Id.* During petitioner's term here, he has consistently lived at a known address, worked lawfully under a federal work permit, and has no criminal history. Pet. ¶ 2; P. Decl. ¶ 4. He applied for asylum within one year of his arrival in the United States. Pet. ¶ 2; P. Decl. ¶ 3.

On August 28, 2026, ICE officers arrested petitioner at his home. Pet. ¶ 3; P. Decl. ¶ 5. Petitioner received no notice or hearing, and there was no judicial warrant for his arrest. *Id.* Petitioner was taken into immigration custody where he remains and has not received an individualized custody or bond determination. Pet. ¶¶ 3-4; P. Decl. ¶¶ 6-7.

## III.

## DISCUSSION

Petitioner claims his detention without a pre-deprivation hearing violated his Fifth Amendment rights to procedural and substantive due process and the INA. *Id.* ¶¶ 108-28.

### A. This Court Has Jurisdiction Over the Claims in the Petition

A federal district court may issue a writ of habeas corpus when a petitioner demonstrates he is "in custody in violation of the Constitution or laws or treaties of the

United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Here, petitioner argues he should be released from respondents' custody because his detention violates the Due Process Clause of the Fifth Amendment and the INA. *See* Pet. ¶¶ 108-28. He has therefore properly invoked this court's habeas jurisdiction.

The INA contains several provisions that limit judicial review of immigration-related matters, including most notably 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g). While § 1252(g) strips the court of jurisdiction to hear any claim "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders," the Supreme Court has clarified that the language of § 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions," but instead refers "to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (citation omitted). The applicability of § 1252(b)(9), which works in conjunction with § 1252(a)(5) to channel certain immigration-related matters to the Courts of Appeals, has been limited in similar fashion. *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) (citation omitted); *see also Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 810-11 (9th Cir. 2020) ("Section 1252(b)(9) is also not a bar to jurisdiction . . . because claims challenging the legality of detention . . . are independent of the removal process.") (citations omitted). Because petitioner is challenging his detention rather than any of the three actions listed above, 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g) do not strip this court of jurisdiction.

**B. <u>Petitioner's Detention Without Adequate Procedural Protections Violated Due Process</u>**

The Due Process Clause of the Fifth Amendment prohibits the government from depriving an individual of liberty without due process of law. U.S. Const. amend. V. "Procedural due process imposes constraints on governmental decisions which deprive

individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Federal courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State . . . ; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 46 (1989) (citations omitted); *see also Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022) (applying the two-step inquiry).

**1. <u>Petitioner Has a Protected Liberty Interest</u>**

The first step asks whether respondents have interfered with petitioner's protected liberty interest. Petitioner contends he has a protected liberty interest in being released from immigration custody. Pet. ¶ 110.

Courts have repeatedly recognized that conditional release from custody may give rise to a protected liberty interest. *See Young v. Harper*, 520 U.S. 143, 147-49 (1997) (conditional release from custody may give rise to a protected liberty interest); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). Courts have found that the government's decision not to detain asylum applicants similarly gives rise to a protected liberty interest. *See Gansukh v. Warden*, 2026 WL 2962655, at *3 (C.D. Cal. Oct. 1, 2026) ("Judges throughout the Ninth Circuit have repeatedly held that a noncitizen who has lived at liberty for an extended duration while her immigration case proceeds – pursuant to the Government's affirmative decision not to detain her – holds a protected liberty interest in remaining free from custody, and may not be detained without pre-deprivation process.") (cleaned up and citation omitted); *Hu v. Mullin*, 2026 WL 2645532, at *3 (C.D. Cal. Sept. 8, 2026) (respondents' discretionary decision not to detain petitioner created a liberty interest while the government processed his asylum application); *Dai v. Janecha*, 2026 WL 2164154, at *1 (C.D. Cal. Jul. 24, 2026) (pursuant to the government's decision not to detain them, noncitizens have a liberty interest in their continued freedom while their

immigration proceedings are pending); *Kalkan v. Chestnut*, 2026 WL 788112, at *1 (E.D. Cal. Mar. 20, 2026) (petitioner had liberty interest in being free from detention because immigration officials were aware of his presence, initially approved of that presence, and did not promptly detain him when that status expired); *Kharitonova v. Albarran*, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) (petitioner had the same liberty interest as an individual initially detained and released because the government made a decision not to detain her in the first place); *but see Jemna v. Warden of Otay Mesa Det. Ctr.*, 2026 WL 788172, at *5 (S.D. Cal. Mar. 20, 2026) ("Although Petitioner has a private interest in remaining free, he does not possess the same liberty interest as noncitizens who were previously detained and released pursuant to conditional release or parole.").

Here, petitioner has a liberty interest in his release. Petitioner arrived in the United States two years ago, filed a pending asylum application, was granted an employment authorization permit, and presumably has established a normal life in the United States. Pet. ¶¶ 32-36. He therefore has a protected liberty interest in his release from immigration custody. *See, e.g., Gansukh*, 2026 WL 2962655, at *4 (petitioner, who entered on student visa and has a pending asylum application, "has a protected liberty interest in remaining out of custody"); *Xianming H. v. Warden*, 2026 WL 1283415, at *3 (E.D. Cal. May 11, 2026) (petitioner, who overstayed a tourist visa and has a pending asylum application, "has a clear liberty interest" that is protected by due process); *Al Saadi v. Larose*, 832 F. Supp. 3d 1115, 1123 (S.D. Cal. 2026) (noncitizen who entered on a tourist visa and has a pending asylum application "has developed an interest in remaining during his time here"); *Kharitonova*, 2026 WL 531441 at *2 (same).

**2. <u>Petitioner Was Entitled to a Pre-Deprivation Hearing Prior to Detention Under the Due Process Clause</u>**

"To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three-part test established in *Mathews v. Eldridge* . . . ." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025) (citation omitted); *see also Hernandez v. Sessions*, 872 F.3d 976, 992 (9th Cir. 2017) (applying the *Mathews* factors

in the immigration context). The three factors considered by the court under *Mathews* are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335 (citation omitted).

The first factor examines petitioner's private interest, here his interest in being free from detention. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation omitted); *Hernandez*, 872 F.3d at 993 (holding it "is beyond dispute" that "freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause'"). As discussed above, petitioner was allowed to remain free pending his asylum application, and has lived and worked in the United States for two years. Pet. ¶¶ 32-36. As such, his personal interest in remaining out of immigration custody is extremely high.

The second factor examines the risk of erroneous deprivation of petitioner's liberty interest, as well as the value of additional procedural safeguards. "The risk of an erroneous deprivation of liberty is high where, as here, petitioner has not received any bond or custody redetermination hearing." *R.D.T.M. v. Wofford*, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025) (citation modified). The Supreme Court has made clear that immigration proceedings are civil in nature and must be "nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690. Therefore, immigration detention must be justified by one of two regulatory goals – preventing risk of flight or danger to the community. *Id.* Respondents, in effect, already made such a determination with respect to petitioner when they decided not to detain him pending his asylum application. *See, e.g., Hu*, 2026 WL

2645532, at *3; *Kalkan*, 2026 WL 7881125, at *1; *Kharitonova*, 2026 WL 531441, at *2-*3; *see also Victor B.P. v. Warden*, 2026 WL 1493987, at *4 (E.D. Cal. May 28, 2026) (state court judge's release of petitioner suggests he found petitioner was not a danger to the community). Moreover, respondents do not argue that petitioner is a danger to the community or flight risk. Thus, "[g]iven the absence of any procedural safeguards to determine if [petitioner's] detention was justified, the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *R.D.T.M.*, 2025 WL 2686866, at *6 (citation and internal quotation marks omitted); *Mourey v. Bowen*, 2026 WL 467567, at *5 (C.D. Cal. Jan. 31, 2026) (same).

Finally, the third factor examines the government's interest, which here would be its interest in detaining petitioner absent additional process. The government does not dispute that its interest in detaining petitioner without any procedural protections is low. *See Xianming H.*, 2026 WL 1283415, at *4 ("[T]he Government's interest is low."); *see also Meneses v. Santacruz*, 811 F. Supp. 3d 1158, 1164 (C.D. Cal. 2025) ("there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing"). The cost of providing a pre-deprivation hearing to petitioner is minimal and custody hearings are routinely conducted by Immigration Courts. *See Xianming H.*, 2026 WL 1283415, at *4; *Singh v. Bowen*, 2025 WL 3251437, at *7 (C.D. Cal. Nov. 21, 2025) (citations omitted).

In sum, given petitioner's strong interest in being free from immigration detention, the risk of an erroneous deprivation of his liberty interest, the strong value of additional procedural safeguards, and the lack of government interest in detaining petitioner without additional process, all three of the *Mathews* factors favor petitioner. Therefore, the government's detention of petitioner without adequate process violated petitioner's right to procedural due process under the Fifth Amendment.

But the inquiry does not end here. Respondent appears to argue that any constitutional violations may be remedied by a future post-deprivation hearing. Answer at 2. The question is whether a post-deprivation hearing satisfies due process.

"[T]he purpose of habeas remedies is to put the [petitioner] back in the position he would have been in if the [constitutional] violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (citation and quotation marks omitted). The Ninth Circuit has found that a petitioner is only entitled to relief if he can demonstrate prejudice from the due process violation, but those cases did not concern pre-deprivation and post-deprivation hearings. *See Orellana v. Garland*, 2024 WL 2795192, at *2 (9th Cir. May 31, 2024) ("Generally, an individual may obtain relief for a due process violation only if []he shows that the violation caused [him] prejudice, meaning the violation potentially affected the outcome of the immigration proceeding.") (quotation marks and citation omitted); *U.S. v. Landeros-Morales*, 840 F. App'x 911, 912 (9th Cir. 2020) (assuming the immigration judge violated due process, "[petitioner] is not entitled to relief because he cannot demonstrate prejudice"). And in fact, the Supreme Court has found that "[a] claim to a predeprivation hearing as a matter of constitutional right rests on the proposition that full relief cannot be obtained at a postdeprivation hearing." *Mathews*, 424 U.S. at 331.

Accordingly, many district courts in this Circuit have taken the position "that any post-deprivation process cannot cure the constitutional violation when the non-citizen was entitled to pre-deprivation notice and hearing." *Andriasyan v. Warden*, 2026 WL 1601905, at *9 (C.D. Cal. June 1, 2026); *see, e.g.*, *Villegas Molina v. Mullin*, 2026 WL 1182194, at *3 (C.D. Cal. Apr. 23, 2026) (noting that the severe delay of post-deprivation bond hearings cannot undo the harms of immigration detention such as the loss of jobs and subpar medical care); *Mumaev v. Samaia*, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026) (a post-deprivation hearing cannot support a petitioner's continued detention when the underlying arrest, revocation of parole, and redetention violated due process); *Medrano-Rocha v. Santacruz*, 817 F. Supp. 3d 871, 882 (C.D. Cal. 2026) ("Providing Petitioner with a post-detention hearing or other procedural remedy will not redress the constitutional violation Petitioner has suffered in being re-detained without a pre-deprivation hearing required by due process."). Even courts that have found a post-

deprivation hearing may arguably satisfy due process have raised questions of prejudice and adequacy. *See, e.g., Herman v. DHS*, 2026 WL 1723960, at *5 (C.D. Cal. June 12, 2026) (finding petitioner "was likely prejudiced by being forced to litigate a bond hearing while he is detained . . . [as] detention makes it more difficult for noncitizens to access counsel, obtain evidence, and otherwise prepare for a bond hearing"): *Saballos Rosales v. Noem*, 2026 WL 761371, at *3 (C.D. Cal. Mar. 16, 2026) (a deficient post-deprivation hearing is "no substitute" for the pre-detention process).

On the facts and circumstances of this case, the court finds that a belated bond hearing would not remedy the due process violation. Because petitioner's detention was unlawful, the proper remedy is release from custody. *See Gansukh*, 2026 WL 2962655, at *5; *Xianming H.*, 2026 WL 1283415, at *5; *Benipal v. Rokosky*, 2026 WL 1355010, at *15 (D. Ariz. Apr. 24, 2026); *Kharitonova*, 2026 WL 531441, *1, *4; *see also Singh*, 2025 WL 3251437, at *9.

**3. <u>Petitioner Is Entitled to a Pre-Deprivation Bond Hearing Before Any Future Re-Detention</u>**

Typically, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (citation omitted). In the context of both parole and probation revocations, the nearest analogues to petitioner's situation, the Supreme Court has required pre-deprivation hearings to determine whether an individual's release may be revoked. *See Morrissey*, 408 U.S. at 480-86; *see also Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). Given petitioner's substantial liberty interest and the high risk of erroneous deprivation of that interest absent such a pre-deprivation hearing, due process requires a pre-deprivation hearing. *See, e.g., Singh*, 2025 WL 3251437, at *8; *R.D.T.M.*, 2025 WL 2686866, at *6 (collecting cases). Indeed, in contexts similar to here – where an individual lawfully entered the United States, applied for asylum, and was not initially detained – courts have found that the government should provide notice and a pre-deprivation hearing to determine if the noncitizen is a danger to the community or a flight risk. *See, e.g., Yao v.*

*Janecka*, 2026 WL 2666861, at *6 (C.D. Cal. Sept. 10, 2026); *Hu*, 2026 WL 2645532, at *4; *Al Saadi*, 2026 WL 892831, at *5; *Kalkan*, 2026 WL 788112, at *2; *Kharitonova*, 2026 WL 231441, at *4.

**C. Petitioner's Remaining Claims**

Petitioner also argues his detention violates substantive due process and the INA. Pet. ¶¶ 118-28. Because the court has already concluded that petitioner is entitled to release on procedural due process grounds, it need not address petitioner's remaining claims. Petitioner may raise the claims again if he is subject to any future detention.

**IV.**

**ORDER**

IT IS THEREFORE ORDERED that: (1) Judgment will be entered granting the Petition; (2) petitioner's ex parte application (docket no. 11) is denied as moot; (3) respondents shall immediately release petitioner Dongxu Chen (A# 242-422-390) from immigration custody; (4) petitioner's conditions of release shall be the same as those in place prior to petitioner's most recent detention; (5) respondents shall return any confiscated property and documents to petitioner upon his release; (6) respondents are enjoined and restrained from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation hearing before a neutral decisionmaker, that petitioner presents a flight risk or a danger to the community; and (7) respondents shall file a status report no later than **November 27, 2026,** confirming that petitioner has been released from respondents' custody.

Dated: November 23, 2026

SHERI PYM
United States Magistrate Judge